### Elswick et al. v. Bentley.

Nov. 27, 1945.

O. T. Hinton for appellants.

P. B. Stratton for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On November 23, 1916, John A. Bentley and wife leased certain coal lands for a term of thirty years, or until the coal was all mined, to H. A. Womack, James McBrayer and Frank R. Scott. The lease described the land it covered by reference to lines of adjacent land owners and contained a clause warranting the title. The lessees formed the Kentucky Elkhorn Coal Corporation, hereinafter referred to as Elkhorn, and mined the land for several years.

In 1920 the Big Sandy Company, hereinafter referred to as the Company, which was operating a coal mine on lands adjoining the Elkhorn's lease, filed a bill in equity in the Federal Court charging Elkhorn with knowingly and willfully trespassing upon the land described in its pleading and mining coal therefrom of the value of $350,000. Elkhorn's answer was a traverse and by cross petition it called upon Bentley, its lessor, to defend under his warranty of title. While Bentley did not defend the action he did attend the trial and rendered what assistance he could to Elkhorn. In that action title was tried and the judgment was in favor of the Company, and a special commissioner was named to hear proof and report on the amount of damages it sustained. Elkhorn settled with the Company by the payment of $10,000 and the cost of the action.

Immediately after closing the Federal Court case, Elkhorn, through Scott its president, called upon Bentley to reimburse it for the amount it was out in defending the suit, including costs and attorney's fee, the amount of the $10,000 compromise and royalties paid Bentley for coal mined on the Company's land. Bentley denied all liability on the ground that the trespass was committed willfully and on land not included within the leased boundary.

48

On April 18, 1923, Elkhorn filed this suit in equity in the Pike circuit court against Bentley alleging a breach of the warranty contained in the lease; that the lessees Womack, McBrayer and Scott were strangers in the community and not familiar with the boundary of the land leased, and that Bentley went upon the land with them and pointed out the boundary lines and willfully represented the conditional line between Bart Belcher and R. E. Ramsey to extend far beyond its true location; that the tract to which Bentley showed them the boundary contained 122 acres while the boundary of the land described in the lease contained only 48 acres. It pleaded the judgment of the Federal Court and the amounts it was out by reason thereof and asked judgment against Bentley for $14,000.

By answer and counterclaim filed June 25, 1923, subsequently amended, Bentley traversed the petition and averred that the boundary of the land leased was well marked and known to Scott, Elkhorn's president, who willfully mined the Company's land; by way of counterclaim, Bentley sought to recover $4,500 for unpaid royalties; $5,000 for hauling coal over his land, which was mined on the Company's land; $6,500 for damages done his coal not mined, and other items to a claimed total of $15,200. Also, an estoppel was pleaded against Elkhorn relying upon the warranty in that it refused to pay royalties on coal mined from the Company's land immediately after it began operations thereon.

The record in the instant case was lost and there was an order made to supply it. Then the supplied record was lost and a second order was made to again supply the record. Elkhorn went into Receivership and A. F. Childers as Receiver was made party plaintiff. Subsequently, Elkhorn became a bankrupt and on December 31, 1927, the Trustee in Bankruptcy, G. B. Rackley, was ordered to prosecute this action. R. T. Elswick & Company had a preferred claim against the bankrupt, which it surrendered in consideration of the Trustee in Bankruptcy transferring to it the bankrupt's claim against Bentley, and R. T. Elswick was ordered to be substituted as plaintiff in the present action. Mr. Elswick testified that he and his Company had sold their interest in this claim to Jack Charles and Alex Looney, but he did not know whether the contract provided for his company

to prosecute the action in its name for the benefit of the purchasers.

The Chancellor dismissed both the petition and counterclaim, and here it is not contended by appellant that the boundary as set out in the lease included land owned by the Company, nor is it contended that Bentley's title failed as to any of the land described in the lease; but appellant insists that in actually pointing out the lease boundary on the ground, Bentley extended the Belcher and Ramey conditional line from 700 or 800 feet beyond its true location, and relying upon Bentley's representation as to the land included in the lease, appellant innocently trespassed on the Company's land.

Mr. Bentley testified he went over the corners with Mr. Scott and that the latter knew the line; that the land he leased was covered by the description contained therein, and that he leased nothing outside of that boundary; that the land Elkhorn wrongfully mined lay between the George Potter tract and a corner known in this record as Slick Rock, and Bentley admitted he tried to buy it after suit was filed in the Federal Court by the Company.

Logan (sometimes called Loge) Salyers was in possession of the surface of this Potter land, and the opinion rendered by the Judge of the Federal Court stated Salyers had title to the surface.

Sam Vanover testified that he lived on the Bentley property five or six years and was residing there at the time it was leased to Womack, McBrayer and Scott, and that he worked for the lessees as foreman for about one year; that he showed the lessees the boundary lines of the property they had leased from Bentley, and Scott said that he showed the same lines that Bentley had pointed out to him, (Scott).

We do not find in the record any testimony given by Womack. Mr. McBrayer testified that Mr. Bentley pointed out to him and Womack the boundary of the leased land, but he does not state that as so pointed out the boundary included the land upon which the trespass was made.

In testifying on December 27, 1922, before the special commissioner of the Federal Court who was appoint-

ed to ascertain the Company's damages, when asked where the boundary was, Mr. Scott replied:

"A. I relied on his lease, whatever the metes and bounds called for.

"Q. You say he didn't point out any lines to you at all when he took the lease originally? A. No, sir.

"Q. And did you understand, then, that this conditional line between Ramey and Belcher referred to in the lease was located as is shown on that map? A. As a matter of fact I didn't pay any attention to it at all. * * *

"Q. You didn't take the trouble to find out how far back the property extended? A. No."

The Chancellor found that Bentley had not pointed out to any of the lessees a boundary different from that described in the lease, and as there was no contention that the leased boundary overlapped the Company's land or that the lessees did not get the entire boundary of land described in their lease, he properly dismissed the petition. From the brief resume of the evidence we have given it is patent that it supports the Chancellor's judgment and we are not at liberty to reverse it. There was no cross appeal by Bentley from so much of the judgment as dismissed his counterclaim for the reason, we suppose, that Elkhorn was bankrupt.

Judgment affirmed.